UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SB INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:06-CV-1174-G |
| P.R. JINDAL, | ) | |
| | ) | **ECF** |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are the motions of the defendant, P.R. Jindal ("the defendant" or "Jindal"), to dismiss the claims against him pursuant to Rule 12(b)(6) and to take judicial notice of certain court records located in the Appendix to P.R. Jindal's Brief in Support of His Rule 12(b)(6) Motion to Dismiss ("Defendant's Appendix"). For the reasons discussed below, the defendant's motion to take judicial notice is granted in part and denied in part, and his motion to dismiss is granted.

I. BACKGROUND

The plaintiff, SB International ("SB International" or "the plaintiff"), is a Texas corporation with its principal place of business in Dallas, Texas. First Amended

Complaint ("Complaint") ¶ 1. SB International is in the business of purchasing and reselling steel -- including prime carbon steel plate, and scrap generated from the rolling process -- in bulk to commercial purchasers for use in manufacturing. *Id.* ¶ 6.

The crux of the plaintiff's complaint is that Jindal willfully and intentionally interfered with a contract ("the Plate Agreement") between SB International and Southern Texas Steel, L.L.C. ("STS") and that this alleged tortious interference proximately caused injury to SB International. *Id.* ¶¶ 25-27. Additionally, SB International alleges that the defendant conspired with STS to fraudulently induce SB International to enter into the Plate Agreement by making representations he knew to be false. *Id.* ¶¶ 33-35. SB International's reliance upon these allegedly fraudulent representations led it to sign the Plate Agreement and to pay STS over $1,000,000 in settlement of a prior dispute. *Id.* ¶ 36. Accordingly, SB International contends that Jindal's tortious interference and conspiracy to defraud it proximately caused it to incur damages in excess of $3,000,000. *Id.* ¶ 29.

On October 20, 2006, Jindal filed the instant motion to dismiss on the ground that SB International has failed to plead a claim upon which relief can be granted. P.R. Jindal's Brief in Support of His Rule 12(b)(6) Motion to Dismiss ("Defendant's Brief") at 1. Specifically, Jindal argues that the claims against him are barred by the statute of limitations, that the plaintiff has failed to allege its fraud claim with particularity, and that the plaintiff has not adequately pled a claim for tortious

interference. *Id.* at 6-14. Together with his motion to dismiss, Jindal submitted an appendix and a motion for the court to take judicial notice of court records contained in that appendix.

## II.  ANALYSIS

### A.  Judicial Notice

The Fifth Circuit addressed the propriety of taking judicial notice in *Taylor v. Charter Medical Corporation*, 162 F.3d 827, 829 (5th Cir. 1998), finding that Federal Rule of Evidence 201 allowed a court to take judicial notice of an "adjudicative fact" if the fact is not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. Additionally, the Fifth Circuit has determined that a court may take judicial notice of a "document filed in another court . . . to establish the fact of such litigation and related filings," but "cannot take notice of the factual findings of another court." *Id.* The court reasoned that such findings do not constitute facts "not subject to reasonable dispute" within the meaning of Rule 201 and that the doctrine of collateral estoppel would be superfluous if it were permissible for a court to take judicial notice of a fact merely because it was found to be true in some other action. *Id.* at 830 (citing *United States v. Jones*, 29 F.3d 1549, 1553-54 (11th Cir. 1994); *Liberty Mutual Investments Company v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388-

89 (2d Cir. 1992); *Holloway v. A.L. Lockhart*, 813 F.2d 874, 878-79 (8th Cir. 1987)). While *Taylor* held out the possibility that, in some rare circumstances, courts within the Fifth Circuit might be able to take notice of the factual findings of another court if they satisfied the indisputability requirement of Rule 201(b), the court explained that Rule 201 generally would not permit a court to take judicial notice of findings of fact from other proceedings because those facts are usually disputed and almost always disputable. *Id.* at 830.

Jindal requests that the court take judicial notice of the following records contained in his appendix:

> 1. SB International's Original Petition filed in the 191st District Court of Dallas County, Texas and the Return of Citation. *See* Defendant's Appendix at Tab 1.
>
> 2. STS's Original Counterclaim Against Plaintiff SB International, Inc. filed in the 191st District Court of Dallas County, Texas. *See id.* at Tab 4.
>
> 3. SB International's Response to STS's Motion for Summary Judgment filed in the 191st District Court of Dallas County, Texas. *See id.* at Tab 5.
>
> 4. Jindal United Steel's Original Petition filed in the 334th District Court of Chambers County, Texas. *See id.* at Tab 7.
>
> 5. Defendant/Counter-Plaintiffs' Consolidated Second Amended Counter-Claims Against U.S. Denro Steels, Inc. d/b/a Jindal United Steel Corporation, Jindal Enterprises, LLC d/b/a Jindall Stainless Corporation and Indresh Batra filed in the 344th District Court of Chambers County, Texas. *See id.* at Tab 8.

*See* P.R. Jindal's Motion to Take Judicial Notice of Court Records at 1-2. However, the defendant fails to explain in his motion what exactly he wishes the court to take judicial notice of. If the defendant wishes the court to take judicial notice of the fact that these documents exist and were filed in the courts shown on the first page of each document, that is within the court's power and the court takes such notice. See *Taylor*, 162 F.3d at 830. If, however, Jindal wishes the court to take judicial notice of the contents of those documents, the court concludes that any "facts" contained in the petitions, counterclaims, and motion are subject to reasonable dispute and, therefore, not appropriate for judicial notice. *Id.*; FED. R. EVID. 201(b).

### B. Defendant's Motion to Dismiss

Jindal posits that the claims against him should be dismissed in accordance with Federal Rule of Civil Procedure 12(b)(6) for three reasons. First, Jindal argues that SB International's claims are barred by the statute of limitations. Second, Jindal alleges that SB International failed to adequately plead its claim for conspiracy to defraud. Finally, Jindal argues that the claim should be dismissed because SB International failed to properly plead its claim for tortious interference.

#### 1. *Standard for Dismissal Under Rule 12(b)(6)*

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). There are two primary principles that guide the court's determination of whether dismissal under Rule

12(b)(6) should be granted. First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the nonmovant could prove no set of facts in support of its claims that would entitle it to relief. *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957); *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir. 1994); see also *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing 5B WRIGHT & MILLER § 1357 at 598 (1969), for the proposition that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted"), *cert. denied*, 459 U.S. 1105 (1983). Second, the court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant. See *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corporation*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 846 (5th Cir. 1991). However, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir.2003). In addition, a court must not look beyond the pleadings when determining whether a complaint states a claim upon which relief may be granted. *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 499-500 (5th Cir. 1982), *cert. denied*, 464 U.S. 932 (1983).

2. *Statute of Limitations*

Jindal maintains that the allegations are time-barred under the applicable statute of limitations and should therefore be dismissed. *See* Defendant's Brief at 6. Specifically, Jindal asserts that the two-year statute of limitations applicable to civil conspiracy and tortious interference claims bars SB International's allegations. *See id.*

"A statute of limitations defense may be properly raised in a Rule 12(b)(6) motion to dismiss when the complaint affirmatively shows that the claims are time-barred." *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 579 (N.D. Tex. 2005). A Rule 12(b)(6) dismissal may also be appropriate "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003), *cert. denied*, 540 U.S. 1161 (2004).

The general rule in Texas is that a cause of action accrues and the applicable limitations period begins to run "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). Tortious interference claims are governed by a two-year statute of limitations. *First National Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986). Such claims accrue "when (1) the contract or business relationship is interfered with, and (2) harm is caused to the plaintiff." *Roehrs v. Conesys, Inc.*, No. 3:05-CV-0829-M, 2005 WL 3454015, *4

(N.D. Tex. Dec. 14, 2005) (citing *Hill v. Heritage Resources*, 964 S.W.2d 89, 116 (Tex. App.--El Paso 1997, pet. denied)).  Similarly, claims for civil conspiracy are subject to a two-year statute of limitations.  *Senigaur v. Ford Motor Co.*, 222 F. Supp. 2d 829, 832 n.2 (E.D. Tex. 2002) (citing *Connell v. Connell*, 889 S.W.2d 534, 540 (Tex. App. --San Antonio 1994, writ denied)).  The limitations period for those claims begins to run when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.  *S.V.*, 933 S.W.2d at 4.

     Jindal contends that the limitations period for the plaintiff's civil conspiracy and tortious interference claims expired before SB International filed its original complaint in this suit on June 30, 2006.  He maintains that SB's claims accrued on or before May 7, 2002 because SB International admitted to being damaged on or before that date.  *See* Defendant's Brief at 7.  Jindal argues that SB International admits in its amended complaint that it realized, not later than May 7, 2002, that it had not received the benefit of its bargain with STS.  *Id.* at 8.  Therefore, Jindal concludes, SB International's claims accrued on or before May 7, 2002, and the statute of limitations expired on May 7, 2004.

     In the alternative, Jindal asserts that SB's claims accrued on or before May 16, 2002, because SB International admitted, in its case against STS in Dallas County, that it had been damaged.  *Id.* at 8.  Jindal argues that when SB International filed an action against STS in Dallas County for breach of the Final Settlement Agreement

and fraudulent inducement on May 16, 2002, it admitted the damages it had suffered as of the date the case was filed. *Id.* Thus, because SB International asserts in this case the same injury for which it sought recovery in the Dallas County case, the claim accrued on or before May 16, 2002, and limitations ran not later than May 16, 2004. *Id.*

SB International counters with two arguments: (1) Jindal is estopped from relying on a statute of limitations defense because he fraudulently concealed facts from SB International that would have allowed the plaintiff to discover its cause of action against Jindal, and (2) the discovery rule tolled the statute of limitations so that this lawsuit was not untimely filed. *See* Plaintiff's Response and Brief in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss ("Plaintiff's Response") at 7-9.

a. <u>Fraudulent Concealment</u>

The plaintiff contends that fraudulent concealment prevents the defendant from relying upon a statute of limitations defense. "Under the doctrine of fraudulent concealment, the accrual of the plaintiff's cause of action is deferred because a defendant cannot be permitted to avoid liability for its actions by deceitfully concealing wrongdoing until the statute of limitations has run." *Santanna Natural Gas Corporation v. Hamon Operating Company*, 954 S.W.2d 885, 890 (Tex. App.-- Austin 1997, pet. denied). "Where a defendant is under a duty to make disclosure

- 9 -

but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations." *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). The estoppel effect of fraudulent concealment ends, however, when the plaintiff "learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Id.* at 909.

### b. The Discovery Rule

The plaintiff similarly argues that the discovery rule bars the running of the statute of limitations because injuries based on the defendant's fraudulent conduct were "inherently undiscoverable." Plaintiff's Response at 9. The discovery rule operates as an exception to the statute of limitations. *Boundy v. Dolenz*, No. 3:96-CV-3010-G, 2002 WL 31415998, *6 (N.D. Tex. Oct. 21, 2002), *aff'd*, 87 Fed. Appx. 992 (5th Cir.), *cert. denied*, 543 U.S. 897 (2004). It is a legal principle which suspends the accrual of a cause of action until the plaintiff knows, or in the exercise of reasonable diligence should have known, of the facts giving rise to its claim. *Jackson v. West Telemarketing Corporation Outbound*, 245 F.3d 518, 524 (5th Cir.), *cert. denied*, 534 U.S. 972 (2001). However, the limitations period is not tolled until a party knows all the details and evidence which may be required to prove his cause of action; rather, the period begins to run when the party discovers, or should have discovered, the general

nature of his injury.  *Leigh v. Danek Medical, Inc.*, 28 F.Supp.2d 401, 406 (N.D. Tex. 1998) (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990); *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990)).

### c.  The Defendant's Appendix

Jindal has submitted an appendix containing documents filed in previous lawsuits, a settlement agreement, a letter, part of a deposition transcript and a hearing transcript.  Furthermore, Jindal bases his alternative argument -- that the plaintiff's causes of action accrued no later than May 16, 2002 -- on evidence contained in these documents.  *See* Defendant's Brief at 8-9.  However, none of the items contained in the defendant's appendix is appropriate for consideration in conjunction with the defendant's 12(b)(6) motion to dismiss.  *Carpenters Local Union No. 1846*, 690 F.2d at 499-500 (a court must not look beyond the pleadings when determining whether a complaint states a claim upon which relief may be granted).  Moreover, the court chooses not to convert the 12(b)(6) motion into a motion for summary judgment; therefore, only the parties' pleadings will be considered in determining whether Jindal's 12(b)(6) motion should be granted based on his statute of limitations defense.

### d.  The Plaintiff's Allegations and the Statutes of Limitations

In its amended complaint, SB International alleges that from February 15, 2002 to May 7, 2002, it ordered 36,300 tons of steel plate from STS and paid STS

$800,000 for those orders in accordance with the terms of the Plate Agreement.  *See* Complaint ¶¶ 17, 21-22.  However, STS never delivered any of the steel plate.  *Id.* ¶ 22.  On May 7, 2002, the plaintiff apparently realized STS was not going to abide by the Plate Agreement, so it stopped placing and paying for additional orders.  *Id.* ¶ 23 (stating the total amount paid for steel plate was the $800,000 SB International paid prior to May 7, 2002).  Therefore, on May 7, 2002, SB International knew that STS was refusing to honor the Plate Agreement with which it now alleges Jindal tortiously interfered and through which it alleges Jindal conspired to defraud SB International.

As noted above, the estoppel effect of fraudulent concealment ceases when a plaintiff "learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action."  *Borderlon*, 661 S.W.2d at 909.  In this case, SB International should have investigated the reasons for STS's lack of performance when it determined, on May 7, 2002, that the contract was not being honored.  If SB International did not know the full extent of its injury and that injury's relationship to the defendant at that time, the plaintiff should have inquired to see whether there was a concealed cause of action.  Consequently, the defendant's alleged fraudulent concealment did not operate to toll the statute of limitations for the two years and fifty-five days that would be required to make this suit timely.

Similarly, the discovery rule does not apply to toll the statute of limitations for that length of time. The plaintiff, in the exercise of reasonable diligence, should have discovered the nature of its injury and facts giving rise to its claims on or shortly after May 7, 2002. See *Jackson*, 245 F.3d at 524. Even if some tolling would be appropriate, the plaintiff has made no averment in its complaint that it ever conducted an investigation into Jindal's actions related to the Plate Agreement, let alone that Jindal thwarted such investigation for more than two years, as would be required to make this action timely.[*] All SB International offers are the conclusory allegations that "any applicable statute of limitations has not run" in paragraphs 31 and 40 of the complaint. Because conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss, see *United States ex rel. Willard*, 336 F.3d at 379, the court finds that the statute of limitations bars the plaintiff's claims.

---

[*] If the plaintiff did make such an allegation, the discovery rule still would not toll the statute of limitations for a substantial length of time because a "cause of action [is] deferred only until [the plaintiff] acquire[s] sufficient knowledge of the facts giving rise to its claim, not until it ha[s] sufficient facts to *prove* the allegations." *Kansa Reinsurance Company, Ltd. v. Congressional Mortgage Corporation of Texas*, 20 F.3d 1362, 1370 (5th Cir. 1994) (emphasis in original).

- 13 -

III.  CONCLUSION

For the reasons set forth above, the motion of the defendant to take judicial notice of certain court records from the defendant's appendix is **GRANTED** in part and **DENIED** in part, and the defendant's motion to dismiss is **GRANTED**.

**SO ORDERED**.

May 14, 2007.

_____
A. JOE FISH
CHIEF JUDGE